UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| CHARISSA M. COOKE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 19-031-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MATTHEW G. BEVIN, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Charissa Cooke asserts that she was terminated from her position with the Kentucky Labor Cabinet in Ashland, Kentucky, for voicing opinions and joining with others to support the public education system and pension funding for teachers and other state employees. She alleges claims of: (i) First Amendment retaliation; (ii) supervisory liability; (iii) violations of the Kentucky Constitution; (iv) violations of the Kentucky Revised Statutes; and (v) wrongful termination in violation of public policy. Defendant Matthew Bevin, the Governor of the Commonwealth of Kentucky, has moved to dismiss to claims asserted against him. [Record No. 12] Governor Bevin's motion is well-taken and will be granted. As a result, he will be dismissed as a party to this action.

I.

Cooke previously worked as a paralegal for a workers' compensation administrative law judge with the Kentucky Labor Cabinet. Cooke joined the group KY 120 United ("KY 120") around March of 2018. KY 120 is described as an "informal organization of individuals concerned about public education, teachers, and public employees." [Record No. 1, p. 5]

Cooke claims that she "quickly became one of the primary contacts of KY 120 in Carter County." [*Id*.] A pension reform bill was passed by the General Assembly during the 2018 legislative session, and Cooke was an "outspoken critic" of the bill. [*Id*. at 4-5.]

Using compensatory time off, Cooke traveled to the Kentucky Capitol in Frankfort, Kentucky, on March 28, 2019, to oppose legislation that she claimed "threaten[ed] funding for public schools and state employee pension programs." [*Id*. at 5-6.] She asserts that on this visit to the Capitol, security staff scanned her drivers' license into a computer system and directed her to a station where visitors' photos were taken. [*Id*. at 6.] Cooke also contends that, on prior visits to the Capitol, security required visitors to mark a sign-in sheet and show photo identification. [*Id*.] Cooke alleges that, while being photographed, an officer asked questions that made her feel uneasy. [*Id*.] Cooke indicated that she was a state employee during this alleged questioning; however, she claims that she did not respond when asked to identify her department. [*Id*.] Cooke was not singled-out for questioning and observed other individuals being questioned as they attempted to enter the Capitol. [*Id*. at 7.]

Two unfamiliar women visited Cooke's office in Ashland several days later. [*Id*.] Cooke contends that these women were Anya Carnes and Leslie Tindall, two employees of the Kentucky Labor Cabinet who work in Frankfort. [*Id*. at 7-8.] Carnes terminated Cooke's employment, stating that her "services were no longer needed." [*Id*. at 7.] At some point during the conversation, Carnes took a phone call. [*Id*.] And while Carnes was participating on the call, Cooke allegedly asked Tindall if "she was being fired because of her involvement with KY 120." Cooke claims that Tindall "did not verbally answer, but made a gesture suggesting the answer was yes." [*Id*.] There is no description of the gesture allegedly made by Tindall.

Cooke subsequently sued Carnes and the Secretary of the Kentucky Labor Cabinet, David Dickerson, who "upon information and belief" is Carnes' supervisor. [*Id*. at 4, 8.] Governor Bevin appointed Dickerson as Secretary of Labor. [*Id*. at 8.] Cooke sued Governor Bevin alleging that the governor was involved in her termination. However, the only details provided regarding Governor Bevin's involvement in Cooke's termination is "upon information and belief, Carnes was acting at the direction and behest of Secretary Dickerson and Governor Bevin in terminating Cooke." [*Id*. at 8.] Additionally, Cooke states that "Secretary Dickerson reports directly to Governor Bevin [and] is empowered under KRS 336.030 to make personnel decisions within the Labor Cabinet "with the approval of the Governor." [*Id*.] Cooke claims that "it is reasonable to infer that [her] termination was initiated by Secretary Dickerson with the direct authorization and approval of Governor Bevin." [*Id*. at 9.]

**II.**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). However, under the plausibility standard, "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A plaintiff is not required to plead facts showing that the defendant is likely responsible for the harm alleged, but she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

Finally, the federal pleading standard applies to state law claims that are heard in federal court. *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. Jan. 16, 2015); *see also Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010).

### III.

Cooke must plausibly allege facts indicating that Governor Bevin was personally involved in her termination to survive the governor's motion to dismiss. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988) ("[t]o state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law"); *see also Rowan Cty. v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006) (Kentucky law requires a "causally related violation of a constitutional, statutory, or other clearly established right of the complaint"). Further, "[l]iability will not lie absent active unconstitutional behavior; failure to act or passive behavior is insufficient." *King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012).

And here, all of Cooke's claims against Governor Bevin rely on two main assertions. First, she contends that, "[u]pon information and belief, Carnes was acting at the direction and behest of Secretary Dickerson and Governor Bevin in terminating Cooke." [Record No. 1, p.

8] Next, Cooke asserts that Governor Bevin had to approve her termination under KRS 336.030. [*Id*.] Cooke's claim of supervisory liability relies on an additional contention that Governor Bevin knew or should have known that Secretary Dickerson was retaliating against her for exercising her First Amendment right to speak freely, peaceably assemble, and to petition the government, and failed to prevent Secretary Dickerson from engaging in such conduct.

### A. First Amendment Retaliation

Cooke must present facts indicating that Governor Bevin actively participated in the alleged constitutional violations to succeed on her claim of retaliatory discharge in violation of the First Amendment pursuant to 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (liability under § 1983 must be based on active unconstitutional behavior and not upon a mere failure to act). Cooke contends that Governor Bevin actively participated in the constitutional violations because he directed her termination and had to approve of personnel decisions made by Secretary Dickerson

a. <u>Directed Termination</u>

Cooke initially argues that, "[u]pon information and belief, Carnes was acting at the direction and behest of Secretary Dickerson and Governor Bevin in terminating Cooke." [Record No. 1, p. 8] However, allegations that are based solely on a plaintiff's "information and belief" may be the type of conclusory allegations condemned in *Iqbal* and *Twombly*. The Sixth Circuit has stated, "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *Darvocet*, 756 F.3d at 931. However, that court has recognized that pleading on information and belief is permissible when "a plaintiff may lack personal knowledge of a fact but have sufficient data to justify interposing an allegation

-5-

on the subject or be required to rely on information furnished by others." *Starkey v. JPMorgan Chase Bank, NA*, 573 Fed. App'x 444, 447-48 (6th Cir. 2014) (internal quotations omitted).

While this exception is recognized by the Sixth Circuit, it is not applicable here because Cooke has not presented any data or information that supports her contention. For example, accepting as true the statement that Tindall made a gesture indicating Cooke was fired because of her involvement with KY 120, the gesture does not support the belief that *Governor Bevin* directed Cooke's termination.

The Second Circuit has identified another exception to this standard which has been recognized by the Sixth Circuit but not adopted. Within the Second Circuit, an "information and belief" claim is permissible in a pleading when "the facts are peculiarly within the possession of the defendant." *Darvocet*, 756 F.3d at 931 (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). But this potential exception does not apply in the present case because Cooke could file a Freedom of Information Act request to obtain records related to her termination. In fact, she contends that she filed such a request, but states no documents have been provided with information regarding the reasons for her termination. However, the initial request for records was sent on April 12, 2019, only twelve days before the complaint was filed. [Record Nos. 1, 13-1] Additionally, Cooke has not asserted that the request will never be satisfied or could not have been satisfied prior to her filing this action. Thus, Cooke has not demonstrated that the relevant facts are in the sole possession of Governor Bevin.

    b. <u>Approve Personnel Decisions</u>

Cooke next asserts that "Secretary Dickerson reports directly to Governor Bevin. Secretary Dickerson is empowered under KRS 336.030 to make personnel decisions within the Labor Cabinet 'with the approval of the Governor.'" [Record No. 1, p. 8] But the

plausibility standard does not require that a mischaracterization of law be accepted as true. *See Twombly*, 550 U.S. at 555; *see also Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018) ("a legal conclusion couched as a factual allegation need not be accepted as true").

KRS 336.030 does not provide that the governor's approval is required for termination of employees. Instead, it permits the secretary to *appoint* necessary deputies, attorneys, statisticians, inspectors and other employees with the Governor's approval. *See* KRS 336.030. Therefore, Cooke has not identified a requirement that Bevin personally approve of her termination before it occurred. Finally, the assertion that Secretary Dickerson reports directly to Governor Bevin does not support the factual claim that Governor Bevin was involved in Cooke's termination. Thus, Cooke has failed to present facts, accepted as true, that demonstrate a plausible claim of retaliation by the governor in violation of the First Amendment.

### B. Supervisory Liability

Cooke also contends that Governor Bevin was responsible for the supervision of Secretary Dickerson and directed Secretary Dickerson to retaliate against her in violation of her constitutional rights. However, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Additionally, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300. Because two elements of supervisory liability are (1) supervision and (2) directing the specific incident of misconduct, the statement that Governor Bevin supervised and directed Dickerson to retaliate

is nothing more than a recitation of elements of the cause of action. The assertion itself is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Alternatively, Cooke claims that Governor Bevin knew or should have known that Secretary Dickerson was retaliating against her for exercising her First Amendment right to speak freely, peaceably assemble, and to petition the government, and that the governor failed to prevent Secretary Dickerson from engaging in such conduct. However, as with the First Amendment retaliation claim, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F. 3d 725, 751 (6th Cir. 2006) (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). As a result, the plaintiff's assertion that Governor Bevin failed to prevent Secretary Dickerson from engaging in alleged retaliatory conduct does not provide a factual basis to state a plausible claim for supervisory liability. Accordingly, this claim asserted against Governor Bevin also will be dismissed.

### C. Violation of the Kentucky Constitution

Cooke's third claim is that Governor Bevin violated, and continues to violate, her rights to free speech and peaceable assemble as secured by Sections 1 and 8 of the Kentucky Constitution. To succeed on this claim asserting a violation of the Kentucky Constitution, Cooke must demonstrate an actual connection between Governor Bevin's alleged actions and the alleged violation. *See Rowan Cty.*, 201 S.W.3d at 476. However, the plaintiff's Complaint fails to provide sufficient facts to demonstrate that Governor Bevin took any actions that could lead to a violation. *Simmerman*, 304 F.R.D. at 518; *see also Wilkey*, 366 F. App'x at 637.

Specifically, and as previously explained, Cooke's reliance on KRS 336.030 is a misguided legal conclusion which does not provide a basis for the assertion that Governor

Bevin needed to approve Cooke's termination. Additionally, the claim "upon information and belief" that Governor Bevin directed Cooke's termination constitutes a conclusory allegation. It does not create a plausible inference that it is true and it is not sufficient to support a claim for relief. *Darvocet*, 756 F.3d at 931. Accordingly, Cooke's assertions that Governor Bevin either approved or directed her termination do not present a plausible claim for relief for violations of the Kentucky Constitution.

### D. Violation of KRS 336.130

Cooke also asserts that Governor Bevin violated KRS 336.130 because "Defendants terminated Plaintiff in an effort to intimidate, threaten, and coerce teachers and state employees from speaking and assembling on matters of public import." [Record No. 1, p. 12] Kentucky Revised Statutes section 336.130 states: "[n]either employers or their agents not employees or associations, organizations or groups of employees shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion." KRS 336.130(2). Accordingly, Cooke must present facts, accepted as true, that present a plausible claim that Governor Bevin engaged in unfair or illegal acts or practices, or resorted to violence, intimidation, threats, or coercion.

Cooke does not assert that Governor Bevin directly terminated her employment. Instead, she contends that the governor directed or approved of her termination. "We can think of few tactics available to an employer seeking to discourage association by its employe[e]s for the purpose of collective bargaining which are more coercive or intimidating than the discharge or threatened discharge of those employe[e]s pursuing that objective." *Pari-Mutuel Clerks' Union of Ky., Local 541 v. Ky. Jockey Club*, 551 S.W.2d 801, 802-03 (Ky. 1977). Assuming for the purposes of the present motion that Cooke was pursuing collective

bargaining, she has failed to state a plausible claim for relief because she has not presented facts that Bevin terminated her employment.

As previously explained, the assertions that Governor Bevin directed or approved of Cooke's termination are insufficient to state a plausible claim for relief. The contention that, "upon information and belief," Governor Bevin directed Cooke's termination is a conclusory assertion condemned in *Iqbal* and *Twombly*. Additionally, the claim that Governor Bevin approved of her termination pursuant to KRS 336.030 is an erroneous legal conclusion. Accordingly, Cooke has failed to present facts, accepted as true, to state a plausible claim that Governor Bevin terminated Cooke in an effort to intimidate, threaten, or coerce her.

### E. Wrongful Termination in Violation of Public Policy

Cooke's final claim implicates public policy concerns. "[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Follett v. Gateway Reg'l Health Sys., Inc.*, 229 S.W.3d 925, 927 (Ky. Ct. App. 2007) (internal quotations omitted). While Cooke claims that she was terminated in violation of public policy (i.e., because of her advocacy), she has not provided any facts that connect Governor Bevin to the termination decision.

### IV.

Based upon the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The motion to dismiss [Record No. 12] filed by Defendant Matt Bevin, Governor of the Commonwealth of Kentucky, is **GRANTED**.

2. Plaintiff Carissa Cooke's claims against Defendant Governor Matt Bevin are **DISMISSED**, with prejudice.

3. The plaintiff's claims against the remaining defendants remain pending.

Dated: July 16, 2019.

Signed By: *Danny C. Reeves*
United States District Judge